## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD S. MARTIN, | : | CIVIL NO: 1:21-CV-00512 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| JONATHAN M. BLAKE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.  Introduction.

The plaintiff, Ronald S. Martin ("Martin"), filed the instant complaint *pro se* against the defendants, Deputy Pennsylvania Attorney General Jonathan M. Blake ("DAG Blake"), Pennsylvania Attorney General Josh Shapiro ("AG Shapiro"), and Chief Deputy Pennsylvania Attorney General Keli M. Neary ("CDAG Neary") pursuant to 42 U.S.C. § 1983.  Martin alleges that the defendants violated his First Amendment rights by utilizing a third-party vendor to send him mail that included a copy of Martin's criminal docket sheet.  Currently pending is the defendants' motion to dismiss Martin's complaint.  For the reasons set forth below, we will grant the defendants' motion.

**II.  Background and Procedural History.**

Martin, proceeding *pro se*, began this action on March 22, 2021. *Doc. 1* at 1.

He names DAG Blake, AG Shapiro, and CDAG Neary as defendants. *Id.*  Martin

sues the defendants in both their official and individual capacities. *Id.* at 2.

Martin contends that the defendants violated his First Amendment right to

free speech by utilizing the Pennsylvania Department of Corrections' third-party

vendor SMART Communications to send him mail, which included a docket sheet

from Martin's prior, state criminal case. *Id.*  In his complaint, Martin contends that

the mail sent by DAG Blake was protected by Pennsylvania's Criminal History

Records Act ("CHRIA"), *id.* at 2, and that he raised a CHRIA claim in state court,

*id.* at 5, but he fails to set forth a CHRIA claim in the instant complaint.  As such,

we do not construe Martin to be raising a CHRIA claim here.

The following facts are taken from Martin's complaint and some of the

exhibits attached to the defendants' motion to dismiss the complaint.[1]

---

[1] In addition to considering the allegations of the complaint, in connection
with a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court may consider "'exhibits
attached to the complaint and matters of public record.'" *Schmidt v. Skolas*, 770
F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White
Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  Here, we consider some
of the documents that the defendants submitted in connection with their motion to
dismiss the complaint.  More specifically, we consider documents that are matters
of public record and of which we can take judicial notice, namely, Martin's prior
filing and lawsuits, and corresponding orders from the court. *See doc. 21-1* through
*21-8.*

On March 29, 2019, while Martin was incarcerated, DAG Blake sent mail to Martin that pertained to a lawsuit filed by Martin in which DAG Blake was acting as the attorney for the named Commonwealth defendants. *Doc. 1* at 2; *see also Martin v. Commonwealth,* No. 1:18-CV-1904, 2019 WL 12054772 (M.D. Pa. Aug. 7, 2019).  In connection with his representation, DAG Blake sent Martin a copy of the motion to dismiss that he filed on behalf of the Commonwealth defendants. *Doc. 1* at 2.  Included with those documents was Martin's criminal docket sheet from the underlying state case. *Id.*

Prior to reaching Martin, the mail was sent through the Pennsylvania Department of Corrections' mail handling vendor, SMART Communications. *Id.* at 3.  And by sending the mail to SMART Communications, Martin contends that the defendants "caused the entire contents of the mail to be opened outside the presence of the inmate and placed onto an electronic database," which is searchable by the Department of Corrections and is "accessible globally." *Id.* at 4. Martin further alleges that his civil rights were violated because the safety of he and his family has been "unduly placed in jeopardy by the public posting and world-wide dissemination of [his] Criminal History Records and privileged legal mail." *Id.* at 3.

Characterizing the mail as legal mail, Martin contends that because the mail was opened and inspected by a third party, "scanned and placed on a searchable

electronic database, emailed to SCI-Huntingdon," then "hand-delivered" to Martin

in prison, DAG Blake violated Martin's First Amendment rights. *Id.* at 3–4.  He

contends that the handling of his mail violated his "Free Speech Rights, guaranteed

to prison inmates through the privacy granted by the rules and laws governing

inmate legal mail." *Id.* at 3.  Martin further asserts that a criminal history record

"may not be disseminated without a request," and he did not make such a request.

*Id.* at 4.  He also claims that because his "private information has been placed on

an electronic database that is accessible world-wide via internet[,] [i]t is impossible

to know" how his information "may be used by nefarious actors for blackmail,

public shaming, or other acts of violence committed against [he] and his family."

*Id.* at 5–6.  As a result, Martin claims that he and his family "must spend the rest of

their lives 'looking over their shoulders.'" *Id.* at 6.

   In his complaint, Martin also references the previous lawsuits he filed in

connection to the aforementioned allegations. *Id.* at 5.  On August 1, 2019, Martin

filed a lawsuit in the Dauphin County Court of Common Pleas against DAG Blake,

AG Shapiro, and CDAG Neary alleging that the defendants violated his First

Amendment right and CHRIA by sending a copy of his criminal docket sheet

through SMART Communications. *Doc. 21-4* at 2–6.  The court dismissed that

complaint as frivolous. *Martin v. Blake*, No. 2019-CV-5800-MD (C.P. Dauphin

Cnty., Pa. Aug. 7, 2019).  Martin appealed to the Commonwealth Court of

Pennsylvania, which affirmed the decision of the Court of Common Pleas of Dauphin County. *Martin v. Blake*, No. 185 C.D. 2020, 2020 WL 6256862 (Pa. Commw. Ct. Oct. 23, 2020).  Martin then filed a Petition for Allowance of Appeal from the Commonwealth Court's order affirming the dismissal of his case in the Supreme Court of Pennsylvania, and the court denied that petition. *Martin v. Blake*, No. 150 MAL 2021, 260 A.3d 924 (Pa. 2021).

In the instant complaint, Martin states that he lists AG Shapiro and CDAG Neary as defendants because their names appeared "on the legal mail signature page" of the documents that DAG Blake sent Martin. *Id.* at 4.  He also contends that the inclusion of their names "on the document as secondary signator[ies] establishes [their] relevancy to the civil rights violation." *Id.*

Although Martin contends that "no pecuniary amount can compensate for the fear under which" he and his family will live, he requests punitive damages of $3,000,000. *Id.* at 5–6.  He also requests "a formal written apology by the Defendants, acknowledging wrongdoing." *Id.* at 5.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 16.*  The defendants filed a motion to dismiss for failure to state a claim, pursuant to Federal

Rules of Civil Procedure 12(b)(1)[2] and 12(b)(6). *Doc. 18* at 1.  And on August 10, 2021, the defendants filed a brief in support of their motion to dismiss. *Doc. 21.* Martin then filed a brief in opposition to the motion to dismiss, *doc. 27*, and the defendants filed a reply brief, *doc. 28*.  On January 11, 2022, Martin filed a surreply to the defendants' reply brief. *Doc. 29.*  For the reasons discussed below, we will grant the defendants' motion.

## III.  Pleading and Motion-to-Dismiss Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223,

---

[2] Although the defendants mention Federal Rule of Civil Procedure 12(b)(1) in their motion, they do not brief any 12(b)(1) issues.  Nevertheless, because it is clear that the Eleventh Amendment bars the First Amendment claim against the defendants in their official capacities, we will dismiss the First Amendment claim against the defendants in their official capacities for lack of subject-matter jurisdiction. "Absent waiver by a State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court, a bar that remains in effect when state officials are sued for damages in their official capacities." *Kentucky v. Graham*, 473 U.S. 159, 160 (1985).  And the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 P.C.S.A § 8521(b).

229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true

and construe the complaint in the light most favorable to the nonmoving party.'"

*Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v.*

*Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a

complaint's bald assertions or legal conclusions when deciding a motion to

dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  A

court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff

has not alleged." *Associated Gen. Contractors of Cal. v. California State Council*

*of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more

than mere legal labels and conclusions.  Rather, it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  In practice, consideration of the legal sufficiency of a complaint

entails a three-step analysis:

> First, the court must "tak[e] note of the elements a
> plaintiff must plead to state a claim."  Second, the court should
> identify allegations that, "because they are no more than
> conclusions, are not entitled to the assumption of truth."
> Finally, "where there are well-pleaded factual allegations, a
> court should assume their veracity and then determine whether
> they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (footnote and

citations omitted) (quoting *Iqbal*, 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV.  Discussion.

The defendants argue that the court should dismiss Martin's complaint for numerous reasons.  They contend that they are entitled to qualified immunity.  They also contend that res judicata and collateral estoppel bar Martin's claim.  They further contend that Martin failed to state a claim upon which relief can be granted.  Finally, the defendants contend that AG Shapiro and CDAG Neary are not proper defendants because they lack personal involvement in the matter.  We begin by addressing qualified immunity.  And because the defendants are entitled to qualified immunity, we will grant the motion to dismiss and decline to address the remainder of the defendants' contentions.

Despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v.*

9

*Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity ensures that before officers are subjected to suit, they have notice that their conduct is unlawful. *Id.*  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19.

The qualified immunity analysis has two prongs. *Pearson*, 555 U.S. at 232. One prong of the analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. *Id.*  The other prong of the analysis is whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The court is permitted to exercise its discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first considering the circumstances of the particular case. *Pearson*, 555 U.S. at 236. Thus, the court may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. *Id.*

The Supreme Court has stressed "that lower courts 'should think hard, and then think hard again,' before addressing both qualified immunity and the merits of an underlying constitutional claim." *D.C. v. Wesby*, 138 S. Ct. 577, 589 n.7 (2018) (quoting *Camreta v. Greene*, 563 U.S. 692, 707 (2011)).  In light of this admonition, we turn directly to whether the right was clearly established.

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589.  In other words, "[t]he rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id*. at 589–90 (internal citations and quotation marks omitted).  "It is not enough that the rule is suggested by then-existing precedent." *Id*. at 590.  Rather, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*.  Still, "the facts of the existing precedent need not perfectly match the circumstances of the dispute in which the question arises." *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 570 (3d Cir. 2017). "A public official does not get the benefit of 'one liability-free violation' simply because the circumstance of his case is not identical to that of a prior case." *Peroza-Benitez v. Smith*, 994 F.3d 157, 166 (3d Cir. 2021) (quoting *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004)).  But if the law did not put the officer on notice that his conduct would be clearly unlawful, qualified immunity is appropriate.

11

*Bayer v. Monroe County Children & Youth Services*, 577 F.3d 186, 193 (3d Cir. 2009). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *al-Kidd*, 563 U.S. at 743).

Martin claims that the defendants violated the First Amendment by sending him mail that included his criminal docket sheet through a third-party vendor, such as SMART Communications. We agree with the defendants that they did not violate a clearly established constitutional right. We note that the relevant mail came from DAG Blake, who was representing the opposing parties in Martin's lawsuit, and "communications with defense counsel are not privileged communications as defined by the DOC policy." *McLaughlin v. Zavada*, No. 19-422, 2019 WL 5697347, at *2 (W.D. Pa. Nov. 4, 2019). Martin has not cited, and we cannot locate any precedent that implies, let alone clearly establishes, that it violates the First Amendment to use vendors, such as SMART Communications, to deliver non-privileged mail to incarcerated individuals. Not only is there an absence of robust precedent forbidding such conduct, but there is case law that

implies the contrary.  Particularly relevant, courts in this jurisdiction have held that the use of SMART Communications to deliver non-privileged inmate mail is constitutional. *See Smith v. Wolf*, No. 3:19-cv-0711, 2020 WL 4551229, at *9 (M.D. Pa. Aug. 6, 2020) (holding that the use of SMART Communications to send non-privileged mail does not violate the First Amendment, and that the defendants are entitled to qualified immunity); *see also Woodell v. Pa. Dep't of Corr.*, No. 18-4430, 2020 WL 2841380, at *12 (E.D. Pa. June 1, 2020) (holding that the use of SMART Communications to send non-privileged mail does not violate the First Amendment).  Thus, we conclude that the defendants are entitled to qualified immunity from Martin's First Amendment claim.

## V.  Conclusion.

Based on the foregoing, we will grant the defendants' motion to dismiss the complaint.  An appropriate order will follow.

<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
United States Magistrate Judge